### HENSLEY et al. v. CONWAY et al.
#### No. 692.

Court of Civil Appeals of Texas. Eastland.
April 28, 1930.

A. P. Young, of Stephenville, for appellants.

Oxford & McMillan, of Stephenville, for appellees.

FUNDERBURK, J.

M. Kelley and Harriet Kelley were husband and wife, and at the death of the latter owned as community property 145 acres of the J. M. Espinosa survey in Erath county. The heirs of Harriet Kelley were her said husband and six children; two of the children being E. S. Kelley and George A. Kelley. After the death of his mother, and on November 29, 1895, E. S. Kelley conveyed to his father, M. Kelley, all the interest he then owned in the land. Later George A. Kelley died intestate, without ever having married, his father and his brothers and sisters succeeding by inheritance to all his interest in the land. The interest inherited by E. S. Kelley was an undivided $\frac{1}{120}$. After the death of George A. Kelley, the father, by proper conveyance, acquired the interest of all of the children in the land except the $\frac{1}{120}$ of E. S. Kelley as aforesaid. On September 6, 1899, M. Kelley, who had married again, joined by his wife, deeded all the land to parties whose right and title was subsequently acquired through proper conveyances by J. W. Conway and M. O. Jones. E. S. Kelley died intestate on September 6, 1899, without having conveyed the $\frac{1}{120}$ interest in the land, and by the law of descent his surviving wife, Mrs. C. Kelley, who later married L. D. Wolfe, became the owner of a life estate in one-third of said $\frac{1}{120}$ undivided interest, and his only

child, Cressie Kelley, who afterwards married C. L. Hensley, became the owner of two-thirds of said $\frac{1}{120}$ undivided interest, and one-third in remainder, subject to the said life estate of her mother.

J. W. Conway and M. O. Jones brought this action in trespass to try title against Mrs. L. D. Wolfe and her husband and Mrs. C. L. Hensley and her husband, to recover all the land. Defendants disclaimed except as to said $\frac{1}{120}$ undivided interest. Judgment was for plaintiffs upon their plea of title by limitation, and the defendant Mrs. C. L. Hensley, joined by her husband, has appealed.

It is conceded that, of the $\frac{1}{120}$ undivided interest left in issue after the disclaimers, the plaintiffs acquired title by limitation to the two-thirds thereof which had vested immediately in Mrs. Hensley as the heir of her father, E. S. Kelley, and also to the life estate in one-third thereof which had immediately vested in Mrs. Wolfe as the heir of her said husband. The appeal therefore presents for decision the sole question of whether or not the one-third of the $\frac{1}{120}$ undivided interest which Mrs. C. L. Hensley owned as a remainderman, subject to the life estate of her mother, who was still living, was also barred by limitation.

We have reached the conclusion that this interest was not barred. The statutes of limitation as to an interest in land, which one owns as a remainderman, subject to a life estate in another, do not begin to run in favor of one in possession until the death of the life tenant. Gibbs v. Barkley (Tex. Com. App.) 242 S. W. 462; Millican v. McNeill, 102 Tex. 189, 114 S. W. 106, 21 L. R. A. (N. S.) 60, 132 Am. St. Rep. 863, 20 Ann. Cas. 74; Cole v. Grigsby (Tex. Civ. App.) 35 S. W. 680; Id., 89 Tex. 223, 35 S. W. 792; Cook v. Caswell, 81 Tex. 678, 17 S. W. 385, 387; Willis v. Fiveash (Tex. Civ. App.) 297 S. W. 509; Beaty v. Clymer, 32 Tex. Civ. App. 322, 75 S. W. 540; Phillips v. Palmer, 56 Tex. Civ. App. 91, 120 S. W. 911; Schnabel v. McNeill (Tex. Civ. App.) 110 S. W. 558; Meurin v. Köpplin (Tex. Civ. App.) 100 S. W. 984; Caffey's Ex'rs v. Cooksey, 19 Tex. Civ. App. 145, 47 S. W. 65; Kesterson v. Bailey, 35 Tex. Civ. App. 235, 80 S. W. 97; Govan v. Bynum, 17 Tex. Civ. App. 180, 43 S. W. 319; Morris v. Eddins, 18 Tex. Civ. App. 38, 44 S. W. 203; Haby v. Fuos (Tex. Civ. App.) 25 S. W. 1121.

In Olsen v. Grelle (Tex. Com. App.) 228 S. W. 927, a case where the question of limitation arose as to the possession of defendants who were not strangers to the life estate, the statement of the rule as declared in the above authorities was narrowed so as not to include strangers. This we think cannot be regarded as a holding that limitation would run in favor of strangers in possession. The statement was made, no doubt, in deference

to the decisions in McConnico v. Thompson, 19 Tex. Civ. App. 539, 47 S. W. 537, and Elcan v. Childress, 40 Tex. Civ. App. 193, 89 S. W. 84, which do seem to so hold, and for the purpose of forestalling without discussion any contention that there was a conflict with said decisions. At any rate, there was no occasion presented for determining whether a different rule would apply as to strangers. The cases of McConnico v. Thompson, supra, and Elcan v. Childress, supra, suggest two questions' arising upon this record: (1) Do they correctly declare an exception to the general rule? and (2) Are the plaintiffs in this case and those under whom they claim, properly to be regarded as trespassers or strangers to the defendants' said title. These two questions we will consider in inverse order.

■■ We have no difficulty in satisfying ourselves that those whose possession must be relied upon to effect the bar of the statute were neither strangers nor trespassers.

"The term 'stranger,' as here used, means * * * one who, in deraigning title, does not in any way connect himself with that asserted by the plaintiff.

"A trespasser * * * is one who, not having the title to land, without the consent of the true owner, makes entry thereon." Pilcher v. Kirk, 55 Tex. 208.

Plaintiffs and defendants had precisely the same title from the state down to M. Kelley. They were therefore, under the literal terms of the above definition, not strangers to the title of each other. The plaintiffs and those to whose rights and possession they succeeded, having unquestioned title to $119/_{120}$ of the land, cannot be said to have made a wrongful entry upon the land so as to constitute themselves trespassers. We are therefore of opinion, even if it be granted that the two decisions mentioned correctly declare an exception to the rule, nevertheless limitations never began to run as to the interest in question.

But, since appellees insist that this case is ruled by said decisions, with such recognition of them as is given in Olsen v. Grelle, supra, if we should rest our judgment wholly upon the ground that plaintiffs and those under whom they claim were not strangers or trespassers, that basis for the determination of the question presented would imply that, were the plaintiffs strangers or trespassers, our judgment would be different. By way of disclaiming such implication, we think it not inappropriate to at least call in question the correctness of the proposition that limitation would run against remaindermen in favor of strangers or trespassers before the termination of the life estate.

■ Limitation does not begin to run as against a cause of action until such cause of action accrues. "The accrual of the cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued and the statute begins to run." 37 C. J. 810; Deaton v. Rush, 113 Tex. 176, 252 S. W. 1025. It is elementary that a remainderman has no right of possession until the termination of the life estate. As said in Cook v. Caswell, supra: "A plaintiff in an action of trespass to try title, must show that he has a possessory title to the land at the time of the demise laid in the petition. * * * This the plaintiff failed to do as to so much of the land as is represented by the life estate of his father, J. M. Caswell." Nothing is more certain than that a present right of possession is essential to plaintiff's cause of action in trespass to try title. A necessary allegation of the plaintiff's petition prescribed by statute is "that he was in possession of the premises or entitled to such possession." R. S. 1925, art. 7366. See, also, State v. Dayton Lbr. Co., 106 Tex. 41, 155 S. W. 1178; Stephens v. Motl, 82 Tex. 81, 18 S. W. 99; Carey v. Starr, 93 Tex. 508, 56 S. W. 324. Right of possession being an essential of a cause of action in trespass to try title, such cause of action, it seems to us, cannot accrue within the foregoing definition of accrual, until the life estate in some manner terminates. That reason for the statute not running, it is manifest, would apply to strangers and naked trespassers just the same as to those holding possession under the life tenant.

There are no reasons discussed as the basis of the holding in either of the two cases mentioned. Elcan v. Childress, supra, simply cites McConnico v. Thompson. The latter cites only Watrous' Heirs v. McGrew, 16 Tex. 506. The only thing said in Watrous' Heirs v. McGrew that could even be contended as having a bearing on the question was "that one tenant in common may maintain an action of trespass to try title, against a stranger." We are thus left to speculate as to the theory upon which the decisions were based. But two possible theories suggest themselves to our mind.

One is that a life tenant or a tenant in common with a life tenant, having a possessory right, and therefore an accrued cause of action against a trespasser or stranger, is a representative of the remainderman with power by his inaction to bind the remainderman. The other may be based upon the well-known principle that possession alone is sufficient evidence of title to enable the possessor to maintain trespass to try title against a trespasser or one making a subsequent entry without any color of title.

■ That an exception cannot be based upon the first theory is well shown by authority that must be regarded as of equal or greater rank than the decisions mentioned.

That limitation is not set in motion against a remainderman during the term of the life estate because of the existence of a right of action in the life tenant or another tenant in common is well shown in cases like Cole v. Grigsby (Tex. Civ. App.) 35 S. W. 680, 690, affirmed by the Supreme Court in 89 Tex. 223, 35 S. W. 792, and Millican v. McNeill, 102 Tex. 189, 114 S. W. 106, 21 L. R. A. (N. S.) 60, 132 Am. St. Rep. 863, 20 Ann. Cas. 74. See, also, Court of Civil Appeals decision in the same case; Schnabel v. McNeill (Tex. Civ. App.) 110 S. W. 558. In Cole v. Grigsby, supra, L. B. G. Aspley was owner of a life estate in one-third of the land (or an interest in land) of which R. F. Aspley, his son, owned the other two-thirds in his own right, and one-third in remainder after his father's life estate. Before the bar of limitation was completed against the father as to his life estate, he deeded his interest to his son, R. F. Aspley, who then owned the entire interest. The question was whether or not there was a merger of the life estate with the other interest. R. F. Aspley was a minor when his father conveyed to him his interest. Before he attained his majority, the adverse claimant in possession extinguished such life estate by completing the bar of limitations. The conclusions of the court were as follows:

"(1) That the title of L. B. G. Aspley in the two tracts had become vested in Meisterhans and wife by limitation before there could have been any merger in the two estates in R. F. Aspley;

"(2) that when said title to such life estate became vested in Meisterhans and wife, it was an estate per autre vie, and said R. F. Aspley's remainder therein was not affected;

"(3) that he had no right to the possession of such one-third until after the death of L. B. G. Aspley, and hence is not barred of that interest."

Here we have a clear holding that the life tenant may permit an adverse possession to extinguish by limitation his life estate without affecting the remainderman. Of course, that is wholly inconsistent with the view that the life tenant's right of action set the statute running as against the remainderman upon the principle of representation. If the life tenant can permit an adverse occupancy to accomplish the bar of the statute without affecting the remainderman, there is no reason at all why an independent cotenant's right to sue would affect the remainderman. Millican v. McNeill, supra, is a direct denial that any such principle of distinction can be applied. In that case, adverse possession of the grantees in a deed void except as to a one-sixth life estate, which latter passed only by estoppel, was conceded to have vested limitation title to all the land except the one-sixth life estate. Even the one-sixth life estate was barred by limitation, but the interest of the remainderman therein was held not barred. The land belonged to a number of heirs who, of course, were tenants in common, and the very fact that their interest, as well as that of the life tenant, became barred and the interest of the remainderman not barred shows that the right to sue which the tenants in common had, as well as the life tenant had, in no manner starts the running of the statute as to the remainderman.

With reference to limitation being set in motion because of the right of one in possession, by reason of possession alone, to maintain an action against a subsequent trespasser, it is not thought necessary to dwell at length upon that subject. If a remainderman be found in possession during the existence of the life estate, the possession can in no way be referred to his title as remainderman. He would be deemed as holding under the life tenant or as himself a trespasser upon the land of the life tenant. His title as remainderman would afford him no assistance whatever in a suit because of his lack of a possessory right under that title. If the remainderman should chance to be in possession during the existence of the life estate, can it be contended that, if he simply failed to resist a trespasser who ousted him, limitation would run against him as remainderman? As we have already seen, that effect would not result in the case of any one else claiming under or adverse to a life tenant. It would therefore be illogical to hold that it would have that effect in the case of the remainderman in possession and whose possession had no relation whatever to his title of remainderman.

Aside from that, it may not be amiss to say that, even if an exception could be predicated upon that theory, it would not apply to this case, because there is no pleading or evidence that Mrs. Hensley was in possession of this land at any time prior to the possession of the plaintiffs.

It is therefore our opinion that the judgment of the trial court should be reformed so as to provide that plaintiffs' recovery should be without prejudice to the interest of Mrs. C. L. Hensley as remainderman in one-third of $\frac{1}{120}$ undivided interest in the land. It is accordingly so ordered.