**Ronald ANDREWS, Individually, and as Executor of the Estate of Rawle Andrews, Deceased, Appellant,**

v.

**ALDINE INDEPENDENT SCHOOL DISTRICT, Appellee.**

No. 14–02–01282–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 4, 2003.

Robert S. MacIntyre, Jr., Nasiche Biscette, Houston, for appellant.

John H. Barr, Leslie Williams Taylor, Richard F. Whiteley, Houston, for appellee.

Panel consists of Chief Justice BRISTER and Justices FOWLER and EDELMAN.

## OPINION ON REHEARING

SCOTT BRISTER, Chief Justice.

We withdraw our opinion of July 24, 2003, and issue this opinion on rehearing. Rawle Andrews died on July 12, 2001, leaving behind him substantial tax liabilities. Shortly thereafter, his son was appointed executor of his estate and a dependent administration was opened.

Aldine Independent School District filed a probate claim against the estate on November 16, 2001, asserting delinquent ad valorem taxes of $217,318. No action was taken on the claim. Six months later,

Aldine notified the estate's representative it had posted three of the properties for foreclosure sale. This suit ensued.

Both parties moved for summary judgment. The estate's representative sought a declaration that Aldine's claims were barred by limitations, as it failed to file suit within ninety days after its claims were rejected by operation of law.[1] Aldine sought the taxes and foreclosure. The Probate Court granted Aldine's motion and denied the representative's. We review both motions, determine all questions presented, and render the judgment the trial court should have rendered.[2]

### The Probate Code and Taxes

As a part of extensive revisions to the Tax Code in 1999, the Legislature added section 5C to the Texas Probate Code to govern jurisdiction of ad valorem taxes disputes involving a dependent administration of a decedent's estate.[3] Under that

---

1. *See* TEX. PROB.CODE §§ 309–10, 313.

2. *See Lubbock County, Tex. v. Trammel's Lubbock Bail Bonds,* 80 S.W.3d 580, 583 (Tex. 2002).

3. § 5C. Actions to Collect Delinquent Property Taxes

    (a) This section applies only to a decedent's estate that:

        (1) is being administered in a pending probate proceeding;

        (2) owns or claims an interest in property against which a taxing unit has imposed ad valorem taxes that are delinquent; and

        (3) is not being administered as an independent administration under Section 145 of this code.

    (b) Notwithstanding any provision of this code to the contrary, if the probate proceedings are pending in a foreign jurisdiction or in a county other than the county in which the taxes were imposed, a suit to foreclose the lien securing payment of the taxes or to enforce personal liability for the taxes must be brought under Section 33.41, Tax Code, in a

court of competent jurisdiction in the county in which the taxes were imposed.

    (c) If the probate proceedings have been pending for four years or less in the county in which the taxes were imposed, the taxing unit may present a claim for the delinquent taxes against the estate to the personal representative of the estate in the probate proceedings.

    (d) If the taxing unit presents a claim against the estate under Subsection (c) of this section:

        (1) the claim of the taxing unit is subject to each applicable provision in Parts 4 and 5, Chapter VIII, of this code that relates to a claim or the enforcement of a claim in a probate proceeding; and

        (2) the taxing unit may not bring a suit in any other court to foreclose the lien securing payment of the taxes or to enforce personal liability for the delinquent taxes before the first day after the fourth anniversary of the date the application for the probate proceeding was filed.

    (e) To foreclose the lien securing payment of the delinquent taxes, the taxing unit must

section's provisions, jurisdiction depends on where the probate proceedings and the taxable property are located. If they are in different counties, courts in the county where the property is located have sole jurisdiction of the tax suit.[4] But if both probate and property are in the same county (as in this case), taxing units may opt for probate court jurisdiction by presenting a claim to the personal representative, or opt out of it by refraining from doing so.[5]

■ Here, Aldine filed a claim with the estate's representative, thus opting for probate jurisdiction. By opting for probate jurisdiction, Aldine subjected its claim to the rules governing enforcement of claims in probate proceedings.[6] Pursuant to those rules, when the estate's representative took no action on the claim within 30 days, it was deemed rejected by operation of law.[7] Once a claim against an estate is rejected, the claimant must file suit within 90 days or the claim is forever barred.[8] Aldine did not. Assuming section 5C applies, Aldine's claim appears to be barred.

### Claims v. Claims for Money

■ Aldine concedes this case falls within the express applicability provision of section 5C.[9] But it argues section 5C does not apply here for three other reasons. First, Aldine argues the section only applies to "claims for money," while its claims are "in rem." For several reasons, we disagree.

First, section 5C mentions only "claims," not "claims for money." The Probate Code defines "claims" to include "liabilities of a decedent which survive, including taxes."[10] Aldine's claim for unpaid taxes clearly falls within the term "claims" actually used in the section. Aldine's distinction between "in personam" and "in rem" proceedings is irrelevant, because the legislature used neither term in defining jurisdiction in section 5C.[11]

■ Second, even if section 5C applied only to "claims for money," Aldine's claim qualifies. Aldine's probate filing stated a claim "for the payment of delinquent ad valorem taxes," not a claim for title or

---

bring a suit under Section 33.41, Tax Code, in a court of competent jurisdiction for the county in which the taxes were imposed if:
    (1) the probate proceedings have been pending in that county for more than four years; and
    (2) the taxing unit did not present a delinquent tax claim under Subsection (c) of this section against the estate in the probate proceeding.
(f) In a suit brought under Subsection (e) of this section, the taxing unit:
    (1) shall make the personal representative of the decedent's estate a party to the suit; and
    (2) may not seek to enforce personal liability for the taxes against the estate of the decedent

4. *Id.* 5C(b).

5. *Id.* 5C(c)–(e).

6. *Id.* 5C(d)(1).

7. *See id.* 309–10.

8. *See id.* 313.

9. *Id.* 5C(a).

10. *Id.* 3(c).

11. While the Twelfth Court of Appeals mentioned the "in rem" and "in personam" distinction in *Phifer v. Nacogdoches County Central Appraisal District,* it decided the case by applying the terms of section 5C, as we do here. See 45 S.W.3d 159, 168 (Tex.App.-Tyler 2000, pet. denied). Similarly, the Fifth Court of Appeals mentioned the distinction in *Highland Park Independent School District v. Thomas,* but decided the case on the basis that it involved an independent administration, which section 5C does not reach. *See* 139 S.W.2d 299, 301 (Tex.Civ.App.-Dallas 1940, no writ).

possession of any real properties. The only attachments to its claim were delinquent tax statements, not the judgments ordering foreclosure. Aldine's claim was clearly a claim for money.

### Rejection of Unnecessary Claims

■ Next, Aldine argues it was not required to present a probate claim, and thus rejection of its claim did not invoke the 90–day limitations period. This Court and others have applied just such a rule to allow recovery of title against an estate even when no suit was filed within 90 days of rejection.[12] But in those cases, the creditor was asserting a vendor's lien, and thus had a superior claim to title.

Aldine has only lien claims; it has no claim to the properties beyond the amount it was owed for taxes.[13] The judgments it had obtained ordered foreclosure of its tax liens on some of the properties, but did not transfer title to Aldine or extinguish the tax liens.[14] As noted above, the claim Aldine actually filed was a claim for money secured by a lien. Aldine is indistinguishable from other creditors holding liens as security, and the Probate Code has specific methods for presenting and handling such claims.[15] And it grants them priority in payment.[16]

Additionally, dependent administration under the Probate Code is intended to ensure the orderly disposition of a decedent's estate,[17] and Aldine's argument would thwart this purpose. If taxing units may foreclose on and sell estate property at any time during an administration without court approval, it will be difficult for the court or creditors to know what assets the estate has. As taxing units have no interest in such properties beyond the taxes due on them, they may sell at prices below what others might obtain, thus decreasing the estate that remains for other creditors or heirs. Section 5C recognizes this interest in orderly administration, specifically barring taxing units that file a probate claim from bringing suit in any other court until four years after the probate proceedings began.[18]

It is true section 5C allows taxing units to opt out of probate proceedings in the same county. But here Aldine opted in. Whatever the prior rule may have been, section 5C does not allow Aldine to file a probate claim and then ignore probate procedures.

### Constitutionality

■ Finally, Aldine argues section 5C does not govern this suit because it vio-

12. *See Walton v. First Nat'l Bank of Trenton*, 956 S.W.2d 647, 652 (Tex.App.-Texarkana 1997, writ denied); *Lusk v. Mintz*, 625 S.W.2d 774, 776 (Tex.App.-Houston [14th Dist.] 1981, no writ).

13. *See* TEX. TAX CODE § 33.53(e) (requiring taxing unit to release tax lien if owner pays delinquent taxes before foreclosure sale); 34.02(d) (requiring proceeds in excess of tax lien to be returned to court clerk).

14. *See id.* 34.01(k) (providing property may be bid off to taxing unit, which then takes title for all taxing units holding liens); § 34.01(q)(1) (providing tax liens are extinguished by foreclosure sale to person other than taxing unit).

15. *See* TEX. PROB.CODE § 306 (entitled "Method of Handling Secured Claims for Money").

16. *See* TEX. PROB.CODE § 322 (giving priority to payments of "[s]ecured claims for money under Section 306(a)(1), including tax liens, so far as the same can be paid out of the proceeds of the property subject to such mortgage or other lien").

17. *See* TEX. PROB.CODE §§ 319–21 (requiring court approval of all payments in statutory priority, with pro rata payments when assets are deficient).

18. *See id.* 5C(d)(2).

lates the state constitutional restriction on legislative acts releasing citizens from the payment of county taxes.[19] But a statute establishing general procedures for tax suits is not unconstitutional under this provision merely because a taxing unit's carelessness may render specific taxes uncollectible.[20]

There are many statutes restricting the time, place, and manner of collections by taxing units.[21] Under Aldine's argument, they would all be unconstitutional whenever a taxing unit failed to comply with them, as the taxes would then be "released." We hold section 5C is not a release of taxes.

### *Conclusion*

In this case, Aldine could have collected the delinquent taxes by (1) seeking foreclosure without filing a claim in probate court, or (2) filing a claim in probate court and then following up with a suit 90 days after its probate claim was rejected. It did neither. Once Aldine chose to file a probate claim, the Code required it to comply with normal probate claims procedures. Because it did not, those procedures bar collection of these taxes from the Estate.

Accordingly, the probate court's summary judgment order is reversed, and judgment rendered that Aldine's tax

claims against the Estate regarding the subject properties are barred.

19. "The Legislature shall have no power to release the inhabitants of, or property in, any county, city or town from the payment of taxes levied for State or county purposes, unless in case of great public calamity in any such county, city or town, when such release may be made by a vote of two-thirds of each House of the Legislature." Tex. Const. art. VIII, § 10.

20. *See Mexia Indep. Sch. Dist. v. City of Mexia,* 134 Tex. 95, 133 S.W.2d 118, 122 (1939) (holding statute requiring parties in tax suit to

take notice of subsequent pleadings was not unconstitutional when City failed to take such notice).

21. *See, e.g.,* Tex. Tax Code § 33.05(a)(2) (barring suit against real property to collect taxes delinquent more than 20 years); § 42.06 (requiring notice of appeal within 15 days of adverse appraisal review board order); 42.22 (establishing mandatory venue for judicial review).